**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 23-7147**

———————————

RAYMOND ANDREW RICHARDSON,

        Petitioner – Appellant,

v.

JONATHAN FRAME, Superintendent,

        Respondent – Appellee.

———————————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:20−cv−00573)

———————————

Argued:  December 9, 2025                        Decided:  January 20, 2026

———————————

Before WILKINSON, KING, and GREGORY, Circuit Judges.

———————————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Gregory joined.

———————————

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Holly J. Wilson, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Patrick Morrisey, Attorney General, Michael R. Williams, Solicitor General, Spencer J. Davenport, Assistant Attorney General, Darius J. Iraj, Legal Fellow, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

WILKINSON, Circuit Judge:

Following his conviction for first-degree robbery, Raymond Richardson sought habeas relief in federal court. He claimed his trial counsel provided ineffective assistance by failing to object to a variance between the indictment and the State's theory at trial. While the indictment charged Richardson with accomplishing the robbery by threatening Denise Cool with deadly force, the State argued at trial that he committed the robbery by physically assaulting her. The district court denied Richardson's petition, and we affirm.

The indictment informed Richardson that he was charged with committing first-degree robbery, and he was found guilty of the same offense. That is ordinarily sufficient to satisfy the demands of due process. In any event, Richardson received actual notice that he was charged with assaulting Cool during the robbery, so he could not have been surprised when the State presented evidence of the assault at trial. Indeed, Richardson has failed to show how the presentation of his defense was hindered by the variance.

I.

A.

Richardson arrived at Cool's door early one morning to offer her $200 worth of cocaine. Cool was wary. Richardson had recently been selling her cocaine mixed with baking soda. Suspecting that this cocaine was also "trash," J.A. 222, Cool refused his offer. When Richardson insisted that she pay him anyway, Cool told him to leave. Instead, he violently attacked her and took $103 she had left on her ironing board.

Richardson was arrested by the police a few days later. In an interview with detectives, Richardson admitted to hitting Cool but insisted he had not taken her money. A

2

West Virginia grand jury ultimately indicted Richardson on six counts, three of which went to trial: first-degree robbery, assault during the commission of a felony, and possession with intent to deliver cocaine. This appeal concerns the robbery count. West Virginia law provides that:

> Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree . . . .

W. Va. Code § 61-2-12(a). The indictment charged Richardson with first-degree robbery under the second method, alleging that he "use[d] the threat of deadly force upon the person of Denise Cool" to "steal, take and carry away [$103] in violation of Chapter 61, Article 2, Section 12(a)." J.A. 113.

At trial, however, the State's theory rested on the first method for committing first-degree robbery: Richardson's actual use of violence against Cool. The State described in its opening remarks how Richardson "beat down" Cool. J.A. 207. Cool then testified that Richardson "punched [her] straight in the face" and "kept pounding [her]" even after she had "dropped to the floor." J.A. 225. And in its closing remarks, the State emphasized to the jury that Richardson "hit [Cool] because she wasn't giving him the money that he wanted." J.A. 510.

The trial court's instructions to the jury likewise focused on Richardson's use of violence. The court explained that first-degree robbery is committed when a person takes the property of another "by partial strangulation or suffocation or by striking or beating or by the threat of presenting of firearms, or by other deadly weapon or instrumentality."

3

J.A. 474. Then the court told the jury that it could convict Richardson if it found, among other elements, that he had "committ[ed] violence against Denise Cool." J.A. 475.

Richardson did not challenge the variance between how the robbery count was charged in the indictment and how it was presented to the jury. In his opening and closing remarks, defense counsel conceded that Richardson had "beat up" Cool but argued that he had done so because Cool demeaned him with a racial slur—not because he was trying to rob her. J.A. 214, 491. Indeed, Richardson's defense at trial was that he had not taken any money from Cool.

The jury convicted Richardson of all three counts.

## B.

After his convictions were affirmed on appeal, Richardson petitioned the state court for habeas relief. Among other issues, Richardson claimed he had received ineffective assistance because his trial counsel did not object to the variance. The court held an evidentiary hearing in which Richardson and his trial counsel testified.

Trial counsel acknowledged that he should have challenged the validity of the indictment but testified that the variance did not affect Richardson's defense:

> Q. Were you in any way hampered by the presentation of your defense by the fact that the indictment said "by threat of deadly force" and the proof was by striking and beating?
>
> A. No. I think the defense would have been the same.
>
> Q. I mean, the defense was -- the defense was not that Mr. Richardson used deadly force as opposed to striking and beating or that he used striking and beating as opposed to deadly force. The defense to the robbery was that there was no larceny of the money and, therefore, there could be no robbery; correct?
>
> A. Correct.

4

> Q. Therefore it did not matter in terms of your defense how that first degree robbery was accomplished?
>
> A. Correct.

J.A. 745–46. When asked if he had been surprised when the State presented evidence of the assault, trial counsel said only that he had "missed that issue in the indictment." J.A. 758. He also agreed that another count in the indictment "very clearly said" that Richardson assaulted Cool "by means of striking and blows and violence." J.A. 746. Specifically, the assault count charged Richardson with "punch[ing], kick[ing] and wound[ing] Denise Cool, during the commission of . . . first degree robbery." J.A. 113.

For his part, Richardson acknowledged that "[t]he defense's theory was that yes, there was a domestic issue that happened bordering on possibly a battery or assault and battery, but there was no robbery." J.A. 725. And he conceded that the options available to the defense were limited by his admission to the police that he had gotten into a physical altercation with Cool. Nevertheless, Richardson testified that he was surprised when the State presented evidence of the assault because he had "based [his] defense on that version of the indictment" charging him with threatening Cool with deadly force. J.A. 766.

The state court denied Richardson's habeas petition, finding that he "quite clearly knew the offense with which he was charged." J.A. 80. The court explained that the indictment informed Richardson that he was charged with first-degree robbery and included the statute he was charged with violating. It also observed that the assault count in the indictment put Richardson on notice that he was charged with committing violence against Cool "by punching, kicking, and wounding her." J.A. 80. In any event, the court found that Richardson had not been prejudiced because whether the robbery "was

5

accomplished with a gun or by physical violence was, frankly, not germane to [his] defense." J.A. 80. The court thus concluded that it would have overruled any objection to the variance that Richardson might have made at trial or in a post-trial motion.

The West Virginia Supreme Court of Appeals affirmed the state court's decision. It explained that the indictment informed Richardson that he was charged with first-degree robbery under § 61-2-12(a) and that the State planned to introduce evidence of the assault. The court also observed that "the means by which [Richardson] accomplished the robbery . . . was irrelevant to the defense theory." J.A. 103. Accordingly, the court held that "any difference between the allegations in the indictment and the evidence at trial did not mislead [Richardson], subject him to any additional burden of proof, or otherwise prejudice him and so was an amendment in form, only." J.A. 103.

After exhausting his ability to seek habeas relief in state court, Richardson petitioned the district court for federal habeas relief under 28 U.S.C. § 2254. The district court denied the petition, finding that Richardson received actual notice "sufficient to apprise him of the charges he needed to be prepared to meet at trial, as required by the Fourteenth Amendment Due Process Clause." J.A. 687–88. The district court granted Richardson's motion for a certificate of appealability, however, and this appeal followed.

II.

A.

We review de novo the district court's decision to deny federal habeas relief. *Bryant v. Stirling*, 126 F.4th 991, 995–96 (4th Cir. 2025). Our review of the West Virginia Supreme Court of Appeals' decision is far more deferential, however. We may not grant

6

habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a high bar. Richardson "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When a petitioner's habeas claim is based on the ineffective assistance of counsel, "we review the claim through the additional lens of *Strickland* and its progeny." *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012). Under that standard, the petitioner much show "that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. And prejudice exists only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). For the reasons set forth below, Richardson has come nowhere close to meeting this "doubly deferential" standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

7

B.

Richardson claims the variance between how the robbery count was charged in the indictment and how it was presented to the jury deprived him of his Fourteenth Amendment right to due process. He argues that his counsel's failure to challenge the variance was objectively unreasonable and prejudiced his defense. We disagree. The variance did not deprive Richardson of due process, so any objection by counsel would have been futile. Accordingly, Richardson cannot establish that he was prejudiced by counsel's inaction. *See Peterson v. Murray*, 904 F.2d 882, 888 (4th Cir. 1990).

The Due Process Clause of the Fourteenth Amendment requires that a criminal defendant receive "reasonable notice of a charge against him." *In re Oliver*, 333 U.S. 257, 273 (1948). "Reasonable notice 'sufficiently apprises the defendant of what he must be prepared to meet'" such that he has a meaningful opportunity to defend himself at trial. *Stroud v. Polk*, 466 F.3d 291, 296 (4th Cir. 2006) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)). "[A] conviction upon a charge not made . . . constitutes a denial of due process." *Jackson v. Virginia*, 443 U.S. 307, 314 (1979).

Richardson has not shown that the variance at issue here was "so egregiously unfair as to amount to a deprivation of [his] right to due process." *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985).

To begin with, the variance did not even "broaden[] the bases for conviction" such that Richardson was "actually convicted of a crime other than that charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (quoting *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991)). The indictment charged Richardson

8

with violating West Virginia Code § 61-2-12(a), and the jury found him guilty of that very same offense. Richardson thus received "notice of the specific charge" upon which he was ultimately convicted. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

It is true that § 61-2-12(a) provides two alternative means by which first-degree robbery can be accomplished. The indictment charged Richardson with robbing Cool by one means (threatening deadly force), while the evidence presented at trial showed he had done so by the other (committing violence). Where a variance does not "constitute a broadening of the charges," however, it does not ordinarily offend principles of due process. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996); *see also Barbe v. McBride*, 477 F. App'x 49, 51–53 (4th Cir. 2012) (per curiam). After all, "the Constitution does not require the method by which the crime was committed to be alleged in the indictment." *Hartman v. Lee*, 283 F.3d 190, 194 n.3 (4th Cir. 2002).

Richardson relies on two out-of-circuit decisions to argue that a variance violates a defendant's right to due process. *See* Opening Br. at 19–20 (discussing *Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999), and *Cokeley v. Lockhart*, 951 F.2d 916 (8th Cir. 1991)). But in both of those cases, the defendant was convicted of a different offense than the one he was initially charged with. *Lucas*, 179 F.3d at 415; *Cokeley*, 951 F.2d at 920. In cases where the variance at issue concerned only *how* the charged offense was committed, both the Sixth Circuit and the Eighth Circuit have held that a defendant's due process rights are not violated. *Martin v. Kassulke*, 970 F.2d 1539, 1543–47 (6th Cir. 1992); *Stephens v. Norris*, 83 F.3d 223, 224–25 (8th Cir. 1996) (per curiam).

9

For example, in *Martin*, the defendant was charged with first-degree rape by forcible compulsion. 970 F.2d at 1542. At trial, however, the court told the jury that it could also convict him of first-degree rape if the victim was physically helpless. *Id.* Following his conviction, the defendant sought habeas relief in federal court. *Id.* at 1541. The Sixth Circuit explained that the "key question" was "whether rape by forcible compulsion and rape due to physical helplessness should be seen as two alternative crimes or merely two alternative methods by which the one crime, rape, could have been committed." *Id.* at 1543. After concluding that the statute "provides only one offense of rape with two different methods of commission," the Sixth Circuit held that the variance did not violate the defendant's right to due process. *Id.* at 1545.

Similarly, in *Stephens*, the defendant was charged with rape for engaging in sexual intercourse by forcible compulsion. 83 F.3d at 223. At trial, however, the court told the jury that it could convict the defendant of rape if he "had engaged in either sexual intercourse or deviate sexual activity" by forcible compulsion, and the State presented evidence of both sexual acts. *Id.* at 224. Following his conviction, the defendant sought habeas relief in federal court. *Id.* The Eighth Circuit held that there was no due process violation because "controlling [state] law at the time of [the defendant's] trial provided that [the] two 'ways' to commit rape constituted variations of a single crime." *Id.* at 225.

Like *Martin* and *Stephens*, the statute at issue here does not involve two distinct crimes but a single crime that can be accomplished in two alternative ways. *See, e.g., State v. Pannell*, 751, 696 S.E.2d 45, 53 (W. Va. 2010) (per curiam) (stating that there are "two statutory methods for committing the offense of robbery"); *State v. Wilkerson*, 738 S.E.2d

32, 37–38 & n.12 (W. Va. 2013) (similar). Therefore, Richardson "knew or should have known that he could be convicted for engaging in either form of" first-degree robbery when he was charged with violating § 61-2-12(a). *Barbe*, 477 F. App'x at 52.

What is more, Richardson had actual notice that he was charged with committing violence against Cool. The assault count in the indictment charged Richardson with punching, kicking, and wounding her during the commission of the robbery. Richardson thus "clearly had notice of the charges against him, was able to prepare a defense, and was not surprised by the evidence introduced at trial." *Thompson v. Nagle*, 118 F.3d 1442, 1454 (11th Cir. 1997). Due process requires nothing more. *See Hulstine v. Morris*, 819 F.2d 861, 864 (8th Cir. 1987) ("Due process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient."); *Stroud*, 466 F.3d at 296–97.

Finally, even if we were to assume that Richardson was surprised by the change in the State's theory, he still must show that the variance "hinder[ed] the preparation of his defense." *Randall*, 171 F.3d at 203; *see also Ashford*, 780 F.2d at 407; *Barbe*, 477 F. App'x at 52. The West Virginia Supreme Court of Appeals found that Richardson had failed to do so, and there is ample evidence to support its conclusion.

As Richardson testified, the defense's strategy was to argue that Richardson had not taken any money from Cool. Whether Richardson threatened Cool with deadly force or physically attacked her is irrelevant to the presentation of that defense. Moreover, Richardson admitted to the police that he had assaulted Cool and conceded the same at trial. There is no reason to believe that Richardson would have changed course had the

11

robbery count charged him with committing violence against Cool. Indeed, Richardson's trial counsel testified in no uncertain terms that the defense would have been the same notwithstanding the variance and that the variance did not hamper the presentation of the defense in any way.

For the foregoing reasons, we agree with the state court that any objection to the variance would have been futile. Accordingly, Richardson cannot show that he was prejudiced by trial counsel's failure to make such an objection. *Peterson*, 904 F.2d at 888. The district court's denial of Richardson's habeas petition is in all respects affirmed.

*AFFIRMED*