# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1616

_____

Maurice Lovell Anderson

*Petitioner - Appellant*

v.

John King, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 14, 2013
Filed: October 4, 2013

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Early on July 14, 2006, Maurice Anderson fired at least two shots in a crowded bar in St. Paul, Minnesota, killing Julian Roland and wounding two bystanders. After a lengthy trial in Ramsey County District Court, the jury acquitted Anderson of the offenses charged in the amended criminal complaint -- second-degree intentional murder of Roland and attempted second-degree intentional murder of the bystanders -- but found him guilty of five offenses the trial court instructed were lesser included

offenses -- second-degree felony murder of Roland, and four counts of assaulting the injured bystanders. The state courts upheld the conviction and sentence on direct appeal and denied post-conviction relief. Anderson now appeals the district court's[1] denial of his petition for a federal writ of habeas corpus. We granted a certificate of appealability, see 28 U.S.C. § 2253(c)(3), limiting the certificate to one issue, whether Anderson's Fifth and Sixth Amendment rights were violated when the trial court instructed the jury on the uncharged assault offenses. We now affirm.

## I. Background

The trial turned mainly on Anderson's claim that he acted in self-defense. It was undisputed that Roland and Anderson came separately to Diva's Overtime Lounge about 1:00 a.m., accompanied by friends. Roland confronted Anderson, who feared that Roland, a gang member with a reputation for violence, still blamed Anderson for Roland's arrest after a 2005 incident at another nightclub. Tensions mounted. When Anderson went to a patio for a cigar, a friend said Roland was armed and gave Anderson a handgun. Anderson returned to the bar. Roland confronted Anderson again, looking "scary." Anderson pulled the gun from his waistband and fired, hitting Roland in the thigh and abdomen. Roland died at the hospital an hour later. Bystanders D'Andrea Motley and Royce Shuler were both struck in the leg by bullets. Police later found two shell casings. One bullet was found embedded in a wall; a second was still in Shuler's leg at trial. The State's theory, not contested by the defense at trial, was that Anderson fired two bullets that struck Roland, passed through his body, and hit Motley and Shuler.

---

[1]The Honorable Richard J. Kyle, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota.

A few days after the incident, Anderson was charged with second-degree intentional murder of Roland and second-degree assault of Motley and Shuler. Nine months before the May 2007 trial, Anderson gave notice he would claim self-defense as to all charges. Four days before trial, the State filed an amended complaint charging second-degree murder of Roland and attempted second-degree murder of Motley and Shuler.[2] The afternoon before trial, counsel put on the record that the State would agree to concurrent sentences of 17-20 years if Anderson pleaded guilty to the original charges. After the court reviewed with Anderson the substantially longer sentence he could receive if convicted of all the charges in the amended complaint, he confirmed, "I want to go to trial."

The State presented testimony by eighteen witnesses, including seven who were present in the bar at the time of the shooting. Anderson testified at length as the sole defense witness, focusing on his claim that he acted in self-defense. Anderson testified that, when Roland approached and said, "I'm gonna show your ass what we do to snitches," Anderson was sure Roland had a gun and shot him twice when Roland made a move to draw a gun. But no other witness saw Roland with a gun that night, and none was found. Anderson testified he did not know Motley and Shuler and had no intent to injure them. Having heard their testimony, he agreed they were shot and suffered lingering pain from those injuries.

After the close of evidence, defense counsel initiated a colloquy regarding jury instructions that is critical to the primary issue before us:

> [DEFENSE COUNSEL]: Your Honor . . . . I went back and told
> Mr. Anderson [that you were inclined to give a self-defense instruction]
> and Mr. Anderson . . . indicated that, based on your thoughts on self-
> defense, that he would not ask for lesser-included offenses such as

---

[2]The amended complaint also charged Anderson with assaulting the bar owner with a dangerous weapon as he fled. The jury acquitted him of this charge.

Assault in the First Degree, Assault in the Second Degree, and all the lesser-includeds.

Is that correct, Mr. Anderson?

THE DEFENDANT:  Correct.

[DEFENSE COUNSEL]:  And so you don't want me to request any of those lesser-includeds?

THE DEFENDANT:  Correct.

[DEFENSE COUNSEL]:  And you and I have talked endlessly about lesser-includeds in this case, right?

THE DEFENDANT:  Correct.

\*    \*    \*    \*    \*

[THE PROSECUTOR]:  . . .  It is . . . my understanding . . . that the state can ask for lesser-included instructions even if the defense does not. So . . . the state is asking for the inclusion of some lesser-includeds.

THE COURT: Okay.  And we'll discuss that as we go along here.

The court ultimately instructed the jury that they could find Anderson guilty of the lesser included offenses of first-degree assault and/or second-degree assault of bystanders Motley and Shuler and second-degree felony murder of Roland.  In closing argument, defense counsel urged the jury to acquit Anderson on all nine counts because he acted in self-defense.  The jury found him guilty of the four bystander assault charges, as well as the second-degree felony murder of Roland.  Because of factual overlap, he was convicted and sentenced only on the two first-degree assault charges.  The court imposed three consecutive sentences totaling 332 months in prison.

-4-

Anderson appealed to the Minnesota Court of Appeals, represented by new counsel. Relying on State v. Gisege, 561 N.W.2d 152 (Minn. 1997), he argued that the bystander assault charges were not lesser included offenses of the attempted second-degree murder charges in the amended complaint, that the late addition of these charges "prejudiced [his] right to notice and to present a defense," and that he was therefore entitled to a new trial. In Gisege, the Supreme Court of Minnesota held that first-degree assault was not a lesser included offense to attempted first- or second-degree murder. Id. at 155-56. Instructing the jury on that assault charge was "fundamental error," the Court concluded after quoting a passage from the U.S. Supreme Court's opinion in Schmuck v. United States, 489 U.S. 705, 717 (1989): "It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him." Id. at 156, 159. However, the Minnesota Court concluded, it was not *reversible* error because it did not "deprive [Gisege] of a substantial right, namely, the opportunity to prepare a defense to the charge against him." Id. at 159.

Anderson relied on Gisege, including this harmless error principle, in his direct appeal to the Minnesota Court of Appeals, arguing he would have "adjusted" or "fine tuned" his defense strategy if he had received notice of the bystander assault charges. He did not present this as a *federal* claim, except for citations to Schmuck and to Washington v. Texas, 388 U.S. 14, 19 (1967), for the proposition that the right to present an adequate defense is a fundamental right. In response, the State conceded that the bystander assault charges were not lesser included offenses to attempted second-degree murder[3] but argued the conviction should be affirmed because

---

[3]These assault charges were not lesser included offenses, the State acknowledged, because they required proof that was not required to prove attempted second-degree murder -- great bodily harm for first-degree assault, and use of a dangerous weapon for second-degree assault. See Gisege, 561 N.W.2d at 156; Minn. Stat. Ann. §§ 609.04 (lesser-included offenses), 609.19 (murder in the second degree), 609.221 (assault in the first degree), 609.222 (assault in the second degree).

Anderson failed to show, as <u>Gisege</u> required, that "the erroneous charge denied the defendant the opportunity to prepare an adequate defense." 561 N.W.2d at 159. The Court agreed that adding the assault charges was error, but not reversible error:

> This is not a case in which the facts underlying the additional offenses were different from the facts underlying the charged offenses. There were no new facts. Furthermore, importantly, there was no surprise because Anderson litigated the case as though the assault charges were lesser-included offenses.

<u>State v. Anderson</u>, No. A07-1934, 2009 WL 816974 at *4 (Minn. App. 2009). The Supreme Court of Minnesota denied review of this decision.

In his habeas petition to the district court, Anderson asserted that the trial court violated (i) his Fifth Amendment right to remain silent, and (ii) his Fifth and Sixth Amendment right to have notice of the charges and to prepare a defense, when it added assault counts that were not lesser included offenses after Anderson testified. The district court concluded the first claim was procedurally barred. It rejected the second claim on the merits because the Minnesota Court of Appeals decision was not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. <u>See</u> 28 U.S.C. § 2254(d)(1). Anderson appeals the denial of both claims. We granted a certificate of appealability.

Our review of the underlying state court decision, like the district court's, is deferential. <u>See</u> <u>Worthington v. Roper</u>, 631 F.3d 487, 495 (8th Cir.), <u>cert. denied</u>, 132 S. Ct. 763 (2011). The denial of Anderson's right-to-remain-silent claim requires little discussion. The claim is procedurally barred because it was not presented to the state courts. <u>See</u> 28 U.S.C. § 2254(b)(1)(A); <u>Carney v. Fabian</u>, 487 F.3d 1094, 1096 (8th Cir.), <u>cert. denied</u>, 552 U.S. 1068 (2007). At oral argument, counsel conceded this claim was not preserved for federal habeas review.

-6-

## II. Denial of Notice and an Opportunity To Defend

Anderson claims that instructing the jury on bystander assault charges that were not lesser included offenses to the murder charged in the amended complaint violated his *federal* constitutional right to notice of the charges and a meaningful opportunity to defend. See Cokeley v. Lockhart, 951 F.2d 916, 918 (8th Cir. 1991), cert. denied, 506 U.S. 904 (1992). On direct appeal to the Minnesota appellate courts, he relied only on the interpretation of state law in Gisege. Following that state law precedent, the Minnesota Court of Appeals denied relief because Anderson failed to show that "the erroneous charge denied the defendant the opportunity to prepare an adequate defense." Anderson, 2009 WL 816974 at *2. Noting that Anderson's bare citation of Washington v. Texas "arguably" presented this federal claim to the state courts, the district court proceeded to the merits of the state court's no-prejudice ruling.

**A.** On appeal to this court, Anderson relies primarily on a legal theory he did not present to the state courts: that instructing the jury on assault charges that were not lesser included offenses to the murder offenses charged in the amended complaint was "structural error" entitling him to federal habeas relief without a showing that he was denied a fair opportunity to present a defense at trial. Structural errors, the Supreme Court has explained, "contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," which is subject to harmless error analysis. Neder v. United States, 527 U.S. 1, 8 (1999) (quotation omitted). In other words, Anderson urges us to decide that the constitutional standard he urged the state courts to apply -- harmless error review of an erroneous lesser-included-offense instruction -- was contrary to clearly established federal constitutional law as interpreted in Supreme Court cases he did not cite to the state courts. We reject this contention for two distinct reasons.

First, the contention was procedurally defaulted. In Gisege, the Supreme Court of Minnesota adopted a harmless error standard as a matter of state law that it

obviously believed to be consistent with federal constitutional law as reflected in Schmuck. By not presenting this structural error theory on direct appeal, Anderson did not give the state courts an opportunity to reconsider the issue as a question of federal law. The state court record reflects that Anderson was given notice of the assault charges in the original complaint, and that he necessarily prepared to defend those charges until the complaint was amended on the eve of trial. After the close of the evidence, defense counsel confirmed that he and Anderson "have talked endlessly about lesser-includeds in this case," and advised the court that the defense wanted no lesser-included instructions because Anderson was relying on self-defense to all charges. On this record, had the structural error theory been argued, the state courts might have concluded that, as a matter of *federal* constitutional law, even if improperly instructing the jury on additional charges may be structural error in some cases, it was not in this case. In a federal habeas proceeding, that analysis would pose an entirely different question of federal law than the one Anderson urges us to decide. See 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

Second, in arguing the trial court committed structural error by instructing on the bystander assault charges, Anderson relies on Supreme Court cases decided prior to decisions that separated a limited number of "structural errors" from the much larger universe of constitutional errors that are subject to harmless error review. See, e.g., Neder, 527 U.S. at 8. Primarily, Anderson relies on the factually distinguishable decision in Dunn v. United States, 442 U.S. 100 (1979). The Court has cautioned that the controlling statutory habeas corpus standard -- "clearly established federal law, as determined by the Supreme Court of the United States" -- "refers to the holdings, as opposed to the dicta, of this Court's decisions." Williams, 529 U.S. at 412. No prior case has held that depriving a defendant of fair notice and an opportunity to defend is an error that is *totally exempt* from harmless error review. For that reason, given the unusual procedural facts of this case -- Anderson had notice of and prepared to defend the assault charges in the trial court and then urged the state appellate courts to apply harmless error review to the resulting error -- we cannot conclude that the

Minnesota Court of Appeals decision applying harmless error review under state law was contrary to clearly established U.S. Supreme Court precedent.

**B.** Alternatively, Anderson argues the state court unreasonably applied clearly established federal law in ruling that he suffered no prejudice. We disagree. Anderson argued to the Minnesota Court of Appeals that he could have "adjust[ed] or fine-tune[d] his trial strategy" if he had earlier notice of the bystander assault charges. But he did not provide the court with an explanation or example of what he would have done differently. The Minnesota Court rejected this claim, concluding: "It indisputably appears on this record that his defense to any and all charges of any nature would have remained the same, namely, self-defense." Anderson, 2009 WL 816974 at *2. When the state court has determined that a trial error did not prejudice the defendant's right to a fair trial, "federal courts may not grant relief unless the state trial error had a substantial and injurious effect or influence in determining the jury's verdict." Jackson v. Norris, 573 F.3d 856, 858 (8th Cir. 2009) (quotation omitted), cert. denied, 130 S. Ct. 2415 (2010). Our review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

Here, our review of the trial transcript makes it unmistakably clear that Anderson prepared his trial defense based on an initial complaint that included bystander assault charges, and that the amended complaint eliminating those charges was filed on the eve of trial for the apparent purpose of inducing Anderson to plead guilty to the original charges. After the close of evidence, defense counsel asserted that the assault charges were lesser included offenses, confirmed that he and Anderson "have talked endlessly about lesser-includeds in this case," and advised the court that the defense wanted no lesser-included instructions because Anderson was relying on self-defense to all charges. As the Minnesota Court of Appeals explained, Anderson's only defense to counter the testimony of the numerous eye witnesses who saw him shoot Roland was self-defense. It is simply not credible to suggest that he would not

have testified if the amended complaint had included the less serious (but not lesser included) bystander assault charges. In defending the bystander charges, Anderson testified that he had no intent to harm Motley and Shuler. But under Minnesota's doctrine of transferred intent, that was not a defense, either to attempted second-degree murder or to the bystander assault charges, if the jury found that Motley and Shuler were seriously injured by bullets fired by Anderson with the intent to injure Roland. Anderson, 2009 WL 816974 at *3. Anderson now suggests he could have drawn upon evidence regarding bullet trajectories to argue he did not fire the bullets that struck Motley and Shuler. But that argument (i) could have been made to the jury in closing argument based on the facts in evidence, and (ii) was not presented to the state appellate courts. On this record, we conclude that the harmless error decision of the Minnesota Court of Appeals was not an unreasonable application of clearly established federal law as established by the U.S. Supreme Court.

The judgment of the district court is affirmed.

_____